# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

One 2015 Chevrolet Silverado Pick-Up Truck, black in color, bearing Michigan license plates of CMG5797, VIN # 1GCVKREC2FZ199662, located at 4725 W. Electric Avenue, West Milwaukee, WI (DEA), listing to Gordon Floyd Gould, 318 N. 4 Street, Manistique, MI 49854-1029.

Case No. 16-894 M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ■ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) – possession with intent to distribute marijuana

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Luke Hepp
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: August 12, 2016

*Judge's signature*

City and State: Milwaukee, Wisconsin

Hon. Nancy Joseph_____, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## I. AGENT EXPERTISE AND KNOWLEDGE

I, Luke Hepp, being first duly sworn, depose and state as follows:

1. I am a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation (hereinafter "DCI"), and have been a sworn law enforcement officer for more than nine years. I am currently assigned to the Wisconsin High Intensity Drug Trafficking Areas (hereinafter "HIDTA") Heroin Initiative. I am currently deputized as a federal task force agent with the United States Department of Justice, Drug Enforcement Administration (hereinafter "DEA"). As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

2. In connection with my official DCI and DEA duties, I investigate criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances. I have participated in the execution of multiple federal search warrants.

3. This affidavit is submitted in support of an application for a search warrant regarding violations of federal law, including violations of Title 21, U.S.C. Sections 841(a)(1), Distribution of, and Possession with Intent to Distribute, Controlled

Substances; Use of and Communications Facilities to Facilitate Controlled Substance Felonies; and, Title 18, U.S.C. Section 1952, Interstate Travel to in Aid of Racketeering Enterprises, and Title 18, U.S.C. Section 2. I am familiar with the following:

a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c. I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f. I know that drug traffickers often use electronic equipment, wireless and land-line telephones, and pagers to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

4. The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations set forth above occurred, and that probable cause exits to believe that the property described in Attachment A, incorporated herein by reference, contain the items that are described in Attachment B.

## II. INDENTIFICATION OF PROPERTY TO BE SEARCHED

The property to be searched is:

One 2015 Chevrolet Silverado Pick-Up Truck, black in color, bearing Michigan license plate CMG5797, VIN # 1GCVKREC2FZ199662, located at 4725 W. Electric Avenue, West Milwaukee, WI (DEA), listing to Gordon Floyd Gould, 318 N. 4 Street, Manistique, MI 49854-1029.

## II. PROBABLE CAUSE

### A. Confidential Informant Information

5. An individual was arrested by agents on federal charges of distribution of cocaine. The individual (hereafter "CI[1]") agreed to cooperate with agents in the investigation of other narcotics traffickers known to the CI. On August 13, 2013, the CI provided a statement, which case agents believe to be truthful, as it was against the CI's penal interest.

6. The CI identified a telephone number as the number for a marijuana trafficker known to the CI as "Gordy" or "Sluggo." The CI related that "Gordy" lives in Manistique, Michigan and is a large-scale marijuana dealer.

7. Telephone records obtained from Verizon for the target telephone revealed the subscriber as Gordon GOULD of 318 N. 4th St, Manistique, Michigan.

8. Case agents showed a Michigan Department of Transportation photograph of Gordon GOULD, white male with a date of birth of July 6, 1961 to the CI, and the CI

---

[1] [1] Case agents believe the information provided by the CI to be truthful and reliable. The CI has made statements against the CI's penal interest. The CI has been providing reliable information to law enforcement since June 2013. Specifically, the CI conducted multiple controlled purchases of heroin and marijuana from individuals. The CI's information has led to the issuance of several search warrants in the Milwaukee, Wisconsin area. The CI has conducted several consensually-recorded conversations with drug dealers, both in person and on the telephone. The CI's information has been corroborated by other confidential sources, information obtained from various public databases, physical surveillance, and through controlled drug purchases and consensually-recorded conversations and phone calls. The CI's information has never been found to be false or misleading. The CI has convictions for Conspiracy to Distribute Cocaine, Possession of a Controlled Substance, and Operating While Intoxicated. The CI is cooperating with law enforcement seeking consideration in regard to a pending federal drug case to which the CI has pleaded guilty. The CI has not received monetary compensation in return for this information and assistance. For these reasons, I consider the CI to be reliable.

positively identified the person depicted in the photograph as the person known to the CI as "Sluggo" or "Gordy."

9. The CI has had conversations with GOULD during which time GOULD admitted to having five or six different marijuana "grows" concealed in forested areas of upper Michigan. GOULD plants the "grows" in several different locations in an attempt to conceal the "grows" from law enforcement and in the event law enforcement were to discover one of the "grows," GOULD would still have the remaining "grows" to harvest.

10. The CI has purchased multiple pound quantities of marijuana from GOULD for more than a three year period on a regular basis with a total amount estimated to be over 500 pounds.

11. The CI related that GOULD routinely travels from Manistique, Michigan to the Milwaukee area to deliver pound quantities of marijuana to different customers.

12. The CI related that GOULD routinely charges $2,000 to $2,200 per pound for the marijuana.

B. Controlled Purchases of Narcotics and Consensual Phone Calls

13. On Tuesday, August 13, 2013, at approximately 11:43 a.m. under the direction and control of case agents the CI placed a recorded telephone call to GOULD by calling telephone number (906) 286-3693. GOULD told the CI that GOULD would "be down there" (Milwaukee) next week. The CI asked if GOULD would be bringing "cartons of those cigarettes" (The CI related that "cartons of cigarettes" is code used between the CI and GOULD for pound quantities of marijuana). GOULD stated that he "has them but the fresh stuff wouldn't be ready for another month." Later in the conversation,

GOULD related having someone who has a machine that assists in processing the plants. GOULD stated that he would "grab one of them and you know what I mean and see what happens." The CI related that meant GOULD would bring one pound of marijuana and deliver it to the CI, and the CI would sell the marijuana to customers and see what the customers say about the quality. The CI related that when GOULD stated "the fresh stuff wouldn't be ready for another month" it meant that GOULD's marijuana plants contained in the "grows" would not be ready to harvest for another month.

14. On Tuesday, August 27, 2013 at approximately 1:00 p.m. case agents interviewed the CI. The CI stated that the CI had been contacted by GOULD over the telephone on Monday, August 26th, 2013, and GOULD told the CI that GOULD would be in Milwaukee on Thursday (August 29th). On Monday, August 26th, 2013 at 5:27 p.m. GOULD sent a text message to the CI that read "cigs r 2 apeice." The CI related that the text message was code meaning a one pound quantity of marijuana was $2,000.

15. On Tuesday, August 27, 2013 at 1:18 p.m. under the direction and control of case agents the CI placed a recorded telephone call to GOULD. During the telephone call GOULD agreed to bring "one" for the CI and to meet at a location known to the CI and GOULD from previous drug deals. GOULD and the CI agreed to meet on Thursday, August 29th, 2013 at 10:00 a.m. After the telephone call ended, the CI related that "one" referenced by GOULD was code for one pound of marijuana, and that the location that the deal would take place would be the parking lot of the "Best Buy" store located at Interstate 43 and Brown Deer Road.

16. On Thursday, August 29, 2013 at 9:00 a.m. case agents briefed law enforcement agents on the planned controlled buy for one pound of marijuana that was to take place at 8755 N. Port Washington Rd, Fox Point, WI.

17. On Thursday, August 29, 2013 at 9:22 a.m. GOULD called the CI and informed the CI that GOULD would be at the meet spot in 50 minutes. This call was monitored by case agents and recorded.

18. On Thursday, August 29, 2013 at 9:40 a.m. case agents searched the CI and the CI's vehicle for contraband, weapons and money. Currency was located on the CI's person, and temporarily held by case agents. No contraband or weapons were located and case agents supplied the CI with $2,000 in pre-recorded buy monies.

19. On Thursday, August 29, 2013 at 9:43 a.m. case agents activated a covert digital audio/video recording device and covert audio transmitting device and provided them to the CI.

20. On Thursday, August 29, 2013 at 9:45 a.m. the CI left the pre-determined meet location and drove towards 8755 N. Port Washington Rd. The CI was kept under constant surveillance. At 10:01 a.m. the CI arrived at the north end of the parking lot located at 8755 N. Port Washington Road. The CI subsequently called case agents and informed them that GOULD had called to the CI to let the CI know that GOULD was parked in the parking lot in front of "Best Buy."

21. Case agents observed the CI drive to the parking lot in front of the "Best Buy" store, park, and remain in the vehicle.

22. At 10:04 a.m. case agents observed GOULD exit a black Pontiac Grand Prix vehicle bearing a Michigan license plate of CMG-5797 and enter the CI's vehicle. A check with the Michigan Department of Transportation records revealed that license plate listed to GOULD at 318 N. 4th Street, Manistique, Michigan.

23. At 10:10 a.m. case agents observed GOULD exit the CI's vehicle, walk back to GOULD's vehicle and enter the driver's side of GOULD's vehicle. GOULD then drove from the area. Case agents were able to positively identify GOULD based on comparison to a Michigan Department of Transportation photograph.

24. Case agents kept the CI under constant surveillance and followed the CI to a pre-determined meet spot. Case agents retrieved the covert audio/video recording device and audio transmitting device from the CI. Case agents searched the CI for contraband, weapons and money with none being found.

25. Case agents searched the CI's vehicle and recovered a brown paper bag from the floor of the front passenger side. The bag had the markings of "Jack's Fresh Market – Manistique, MI" printed on it. The CI told case agents that this was the bag that contained the marijuana that GOULD brought into the CI's vehicle. The CI told case agents that GOULD left the bag on the floor and the CI subsequently gave GOULD the $2,000 in buy money in exchange for the marijuana.

26. Case agents examined the paper bag and found that it contained a white plastic garbage bag. Inside of the white garbage bag were two plastic zip lock bags. Each zip lock bag contained a greenish plant-like material believed to be marijuana.

27. Case agents performed a field test on the suspected marijuana the CI purchased from GOULD, and received a positive reading for the presence of Tetrahydrocannabinol (THC), the active ingredient in marijuana. Case agents weighed the marijuana and found the total weight to be 468 grams with packaging.

28. A criminal history check of GOULD revealed a November 21, 1986 conviction for "Marijuana, Sell" from Lansing, Michigan where GOULD was sentenced to confinement for 2 to 6 years. In addition, GOULD was convicted on January 24, 1999 in Federal Court for Conspiracy to Manufacture Marijuana, and was later sentenced to five years in prison.

29. On August 9, 2016 at approximately 12:48 p.m. the CI placed a recorded and monitored telephone call to GOULD at (906) 286-3693. During this conversation, some of which took place in coded language, GOULD advised if the CI wanted to purchase two pounds of marijuana, each pound would cost $2,800 per pound. GOULD and the CI agreed to meet on Thursday August 11, 2016 at approximately 10:00 a.m. at a McDonald's restaurant. The CI believed this McDonald's to be the McDonald's restaurant at 8739 N. Port Washington Road, Fox Point, WI. GOULD advised he would call the CI the following day, August 10, 2016, to confirm the meeting.

30. On August 10, 2016 at approximately 1:39 p.m. the CI placed another recorded and monitored telephone call to GOULD at (906) 286-3693. During this conversation, some of which took place in coded language, the CI informed GOULD that the CI wanted to purchase two pounds of marijuana the following day, August 11, 2016. GOULD told the CI to be sure the CI got there (McDonald's) by 10:00 a.m. because GOULD had to be home by 4:00 p.m. to "sign papers" for GOULD's daughter's house closing. GOULD and the

CI also confirmed to meet at the McDonald's restaurant near Best Buy. Based upon previous meetings, the CI and case agents understood this to be the McDonald's located at 8739 N. Port Washington Road in Fox Point, WI. GOULD instructed the CI to meet there by 9:00 a.m. GOULD advised the CI that it takes GOULD "like five and a half hours" to drive to that McDonald's. GOULD reiterated to the CI that GOULD would be there at 9:00 a.m.

31. On Thursday, August 11, 2016 at 8:04 a.m. the CI called case agents to inform the case agents that GOULD had called the CI on August 11, 2016 at 7:41 a.m., 7:51 a.m., and 8:01 a.m. and that the CI did not answer any of the calls. GOULD had also sent a text message to the CI at 7:42 a.m. that read, "One hour away." The CI replied with a text message that read, "I'll be there by 9." GOULD then replied with a text message that read "HuRry" and "Iam there." The CI replied, "On my way what u in" and GOULD replied with a text message that read, "black truck." The CI subsequently sent "screen shots" of the text messages to case agents.

32. Case agents were aware GOULD owned a 2015 black Chevrolet Silverado bearing Michigan registration CMG5797. Case agents located this vehicle at the Open Pantry Food Mart, 501 W. Brown Deer Road and observed GOULD standing outside of it. At approximately 8:25 a.m. case agents took GOULD into custody without incident pursuant to federal indictment.

33. As case agents opened the front driver's side door to move the vehicle from the gas pumps a strong odor of fresh marijuana was detected emanating from the interior of the vehicle. Case agents transported the vehicle to the Milwaukee District Office of

the Drug Enforcement Administration and secured it. Case agents also observed a black cellular telephone in the vehicle's center console cup holder.

## III. CONCLUSION

Based on the forgoing, I believe there is probable cause to believe that Gordon GOULD has committed violations of federal law, including Title 21, United States Code, Sections 841, 843; and, Title 18, United States Code, Sections 1952 and 2. I further believe that there is probable cause to believe that located at and in the property described in Attachment A, there is evidence of drug trafficking, fruits and instrumentalities of drug trafficking, all of which is detailed more specifically in Attachment B, Items to be seized.

## ATTACHMENT A

The property to be searched is:

One 2015 Chevrolet Silverado Pick-Up Truck, black in color, bearing Michigan license plates of CMG5797, VIN # 1GCVKREC2FZ199662, located at 4725 W. Electric Avenue, West Milwaukee, WI (DEA), listing to Gordon Floyd Gould, 318 N. 4 Street, Manistique, MI 49854-1029.

## ATTACHMENT B

### *Items To Be Seized*

1. Marijuana, controlled substances, and paraphernalia associated with the manufacture and distribution of controlled substances including but not limited to materials and items used for packaging, processing, weighing, and distributing controlled substances.

2. Duffel, canvas bags, suitcases, safes, or other containers to hold or transport controlled substances and drug trafficking related items and proceeds.

3. Proceeds of drug trafficking activities, such as United States currency, precious metals, financial instruments, and jewelry, and documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry or other items obtained with the proceeds from drug trafficking activities.

4. Firearms, ammunition, magazines, gun boxes, firearm purchase records or receipts, and other paraphernalia associated with firearms.

5. Bank account records, loan documents, wire transfer records, money order receipts, postal express mail envelopes, bank statements, safe deposit box keys and records, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of controlled substances, or financial transactions related to the trafficking of controlled substances.

6. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, and/or times when controlled substances were obtained, transferred, sold, distributed, and/or concealed.

7. Personal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes, receipts, documents and other items or lists reflecting names, addresses, purchases, telephone numbers, addresses and

communications regarding illegal activities among and between members and associates involved in drug trafficking activities.

8. Records of off-site storage locations, including but not limited to safe deposit box keys and records, and records and receipts and rental agreements for storage facilities.

9. Cellular telephones, Smartphones, pagers, text messaging systems, and other communication devices, and any and all records associated with such communications services used to commit drug trafficking offenses.

10. Records, items and documents reflecting travel for the purpose of participating in drug trafficking activities, such as passports, airline tickets, bus tickets, vehicle rental receipts, credit card receipts, taxi cab receipts, hotel and restaurant receipts, canceled checks, maps, and records of long distance calls reflecting travel.

11. Indicia of occupancy, residency or ownership of the premises and things described in the warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, addressed envelopes, escrow documents and keys.

12. Photographs, videotapes or other depictions of assets, firearms, coconspirators, or controlled substances.